UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Sit Means Sit Franchise, Inc.,

    Plaintiff

v.

SMSHTX, LLC, et al.,

    Defendants

Case No. 2:23-cv-01464-CDS-DJA

**Order Granting Plaintiff's Motion for Default Judgment and Setting Hearing**

[ECF No. 26]

    Plaintiff Sit Means Sit Franchise, Inc. (SMS) brings this Lanham Act and Trade Secrets and related claims action against defendants SMSHTX, LLC (SMS Houston), SMS NC, LLC (SMS NC)[1] and Hamid Parvizian (together, "defendants").[2] SMS moves for default judgment. ECF No. 26. Defendants have failed to respond. For the following reasons, I grant the motion for default judgment and set a hearing to determine damages.

**I.    Procedural history**

    On September 21, 2023, SMS filed a motion for a preliminary injunction, seeking to enjoin defendants from continuing to operate an unauthorized Sit Means Sit business identified within applicable Franchise agreements, among other alleged competitive violations. ECF No. 6. Defendants were served with a copy of the complaint and injunction motion,[3] but failed to file an answer or opposition to the injunction. As a result, the court set a hearing on the preliminary injunction for November 1, 2023, to give defendants (and their counsel) another opportunity to appear. ECF No. 15. Counsel for SMS was present, but no one appeared for or on behalf of defendants. ECF No. 18. On March 22, 2024, SMS filed the instant motion for default judgment. ECF No. 26. Defendants' response was due on April 4, 2024. As of the date of this order, despite

---

[1] "NC" is short for North Carolina.
[2] Joseph Arnette was initially named as a defendant but has since been voluntarily dismissed with prejudice by SMS. *See* ECF Nos. 16; 17 (corrected version).
[3] *See* ECF Nos. 10; 11; 12; 13.

being properly served (ECF No. 27), defendants have not opposed the motion nor otherwise appeared in this action. I thus grant SMS's motion and enter default judgment against defendants.

## II.     Discussion

Obtaining a default judgment under Federal Rule of Civil Procedure 55 is a two-step process. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (explaining the process). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After default is entered, a party may seek entry of default judgment under Rule 55(b).

Upon entry of default, I take as true the factual allegations in the non-defaulting party's complaint, except those related to the amount of damages. Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Nonetheless, "[e]ntry of default does not entitle the non-defaulting party to a default judgment as a matter of right." *Warner Bros Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). The "general rule [is] that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citing *Peno v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). Whether to grant a default judgment lies within the district court's discretion. *Id.*

SMS's default judgment motion requests (1) a permanent injunction enjoining defendants from continuing to use SMS's trademarks, confidential information, and system to operate their unauthorized dog training businesses; and (2) damages in the amount of $15,600 against SMS NC, LLC; $31,200 against SMSHTX, LLC; and $46,800 against Parvizian. ECF No. 26.

SMS has satisfied the procedural requirements for default judgment as the clerk has entered a default against defendants. ECF No. 21. I now consider the following factors in determining whether to grant a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

The first *Eitel* factor considers whether SMS will suffer prejudice if a default judgment is not entered. Defendants failed to defend against this lawsuit and failed to abate their unauthorized operation of the SMS franchise. SMS will suffer prejudice if default judgment is not entered, as it will have no other means to litigate its claims. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Potential prejudice to Plaintiffs favors granting a default judgment . . . . If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Thus, this factor weighs in favor of entry of default judgment.

The second and third *Eitel* factors favor a default judgment when the "plaintiff state[s] a claim on which the plaintiff may recover." *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978). Here, SMS seeks judgment on its claims of (1) breach of franchise agreement (count one); (2) breach of the Winston-Salem Guaranty, the Parvizian Confidentiality and Non-Competition Agreement 4, and the Franchise Owner Agreement (counts two and three); (3) trademark counterfeiting/infringement under 15 U.S.C. 1114 (count four); (4) misappropriation of trade secrets under 18 U.S.C. § 1836 et seq. (count five); and (5) declaratory relief. ECF No. 1 at 22–29.

Breach-of-contract claims require: (1) a valid contract, (2) performance or excuse of performance by the plaintiff, (3) material breach by the defendant, and (4) damages as a result of the breach. *See Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) (quoting *Malone v. Univ. of Kansas Med. Ctr.*, 552 P.2d 885, 888 (Kan. 1976)). The complaint adequately alleges that: a valid

contract existed (as well as attaches the contracts as exhibits);[4] SMS was not deficient in its performance; defendants breached the contract;[5] and SMS suffered damages as a result.[6]

      A claim for trademark counterfeiting/infringement under the Lanham Act requires: (1) ownership of a registered trademark; (2) use of that mark by the owner before the alleged infringing use; (3) the infringer's use of a virtually identical or confusingly similar trademark without the owner's consent; and (4) that the infringer's use is likely to cause confusion, or to cause a mistake or to deceive. *See Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969–70 (9th Cir. 2007); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175–76 (C.D. Cal. 2002); 15 U.S.C. § 1114(1)(a), (b). The complaint adequately alleges: SMS' ownership of its trademarks (and has attached the trademark registrations themselves);[7] that SMS was using such marks prior to defendants' infringement,[8] that defendants' usage was without consent,[9] and that the use is likely to cause confusion.[10]

      A claim for misappropriation of trade secrets under the Defend Trade Secrets Act requires: (1) that the plaintiff possessed a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020); 18 U.S.C. § 1839(5). The complaint adequately alleges that: SMS possessed trade secrets regarding its dog

---

[4] ECF Nos. 2-2–2-30.

[5] Specifically, for example, by (a) failing to make all required royalty payments to SMS as required by the parties' franchise agreements; (b) failing to comply with the post-termination obligations set forth in the parties' franchise agreements; (c) using SMS's confidential, proprietary, and trade secret information comprising the SMS System in connection with a competitive dog training business; and (d) owning and operating a competitive dog training business after termination of the SMS NC Franchise Agreement. ECF No. 1 at ¶¶ 60, 64, 68.

[6] ECF Nos. 2-31–2-33.

[7] ECF No. 2-1.

[8] ECF No. 1 at ¶¶ 10–11.

[9] *Id.* at ¶¶ 37–52 (outlining defendants' failure to pay for the usage of the trademarks, SMS' decision to terminate the franchise agreements, and defendants' continuing unauthorized use of the trademarks); *see also* Plf.'s Exs. 31–38, ECF Nos. 2-31–2-38.

[10] ECF No. 1 at ¶ 57; *see also* ECF No. 6-5 (multiple 1 star Yelp reviews of Sit Means Sit Houston).

training "System",[11] defendants misappropriated that System,[12] and such misappropriation caused SMS harm.[13] Thus, because SMS has adequately alleged and supported the elements of its various claims, I find that the second and third *Eitel* factors weigh in favor of entry of default judgment.

In assessing the fourth *Eitel* factor, I consider "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether 'the recovery sought is proportional to the harm caused by [the] defendant's conduct.'" *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (quoting *Landstar Ranger, Inc. v. Earth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010)); *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. Here, SMS seeks a total of $93,600 from defendants in compensatory and liquidated damages. ECF No. 26 at 10–11. I find this amount to not be a large sum, especially in relation to the seriousness of defendants' persistent disregard for their contractual obligations and their competitive violations. Further, I find the requested damages breakdown to be relatively proportional to the harm caused by defendants' conduct as the damages represent missed royalty payments as well as harm to SMS' business by the bad reviews caused by defendants' unauthorized, apparently poorly run businesses. This factor thus weighs in favor of entry of default judgment.

The fifth *Eitel* factor weighs the possibility of a dispute regarding facts material to the case. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.* (citation omitted). Defendants have not appeared to rebut any of SMS' allegations. Moreover, SMS has both sufficiently pled facts demonstrating its entitlement to relief as well as provided a multitude of exhibits which support its claims, including the trademark registrations, the franchise and licensing contracts

---

[11] ECF No. 1 at ¶¶ 11, 15.
[12] *Id.* at ¶¶ 32, 42, 50, 52.
[13] *Id.* at ¶¶ 56–57, 76, 78; *see also* ECF No. 6-5 (multiple 1 star Yelp reviews of Sit Means Sit Houston).

and agreements, email communications and photographs demonstrating defendants' breach, and customer reviews demonstrating harm to SMS' reputation and goodwill. Defendants have had the opportunity to clarify that they did not engage in unauthorized behavior or breach the contracts and have not chosen to do so. Consequently, there is little likelihood of a dispute regarding whether defendants are liable in this case. Thus, the fifth factor weighs in favor of entry of default judgment.

The sixth *Eitel* factor considers whether the defendants' default is due to excusable neglect. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. No evidence before me suggests that defendants failed to respond due to excusable neglect. Thus, the sixth *Eitel* factor weighs in favor of entry of default judgment. *See United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam) (holding that it was "perfectly appropriate" for the district court to enter default judgment against a defendant that failed to appear in the action).

Finally, the seventh *Eitel* factor considers the policy favoring a decision on the merits. "Cases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But defendants' failure to respond to the complaint "makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Thus, while this final *Eitel* factor always weighs against an entry of default judgment, it does not preclude me from entering one. "A decision on the merits is desirable, but under these circumstances, default judgment is warranted." *Nev. Prop. 1, LLC v. Kiwibank Ltd.*, 2020 WL 5633048, at *2 (D. Nev. Sept. 21, 2020).

I find that SMS is entitled to default judgment against defendants in the form of their requested declaratory relief and for monetary damages, which will be determined at a later hearing.

III.   Conclusion

IT IS THEREFORE ORDERED that SMS' motion for default judgment [ECF No. 26] is GRANTED.

The court declares that, based on the information before it, SMS is entitled to declaratory relief prohibiting defendants from:

1. Using the SMS marks in commerce in connection with the advertising, promotion, or operation of a dog training business;

2. Misappropriating, using in commerce in connection with the operation of a dog training business, or disclosing any confidential component of the System to any third party;

3. Operating a dog training business in the following Winston-Salem, North Carolina area zip codes: 27006, 27012, 27018, 27023, 27040, 27050, 27103, 27104, and 27106;

4. Operating a dog training business in the following Houston, Texas area zip codes: 77002, 77003, 77004, 77005, 77006, 77007, 77008, 77010, 77018, 77019, 77021, 77023, 77024, 77025, 77027, 77030, 77033, 77036, 77041, 77042, 77046, 77054, 77055, 77056, 77057, 77061, 77063, 77065, 77074, 77077, 77081, 77084, 77087, 77095, 77096, 77098, 77401; 77429, 77433, 77449, 77450, 77493, and 77494; and

5. Deleting or destroying any and all evidence, in any form (paper, electronic, etc.), relevant to SMS's allegations set forth in the complaint, including, without limitation, text messages, emails, faxes, social media posts/websites, and letters.

The court will hold a hearing on **May 29, 2024 at 10:00 a.m.** in LV Courtroom 6B to determine the appropriate amount of damages, if any, to be awarded against defendants.

Dated: May 7, 2024

_____
Cristina D. Silva
United States District Judge