UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Sit Means Sit Franchise, Inc., <br><br> Plaintiff <br><br> v. <br><br> SMSHTX, LLC, et al., <br><br> Defendants | Case No. 2:23-cv-01464-CDS-DJA <br><br> **Amended Order Granting Plaintiff's Motion for Default Judgment and Granting Plaintiff's Motion for Attorneys' Fees and Costs** <br><br> [ECF Nos. 26, 31] |

      Plaintiff Sit Means Sit Franchise, Inc. ("SMS") brings this Lanham Act and Trade Secrets and related claims action against defendants SMSHTX, LLC ("SMS Houston"), SMS NC, LLC ("SMS NC")[1] and Hamid Parvizian (together, "defendants").[2] SMS moved for default judgment. ECF No. 26. Defendants failed to respond. I granted the motion for default judgment and set a hearing to determine damages. ECF No. 29. SMS then moved for an award of attorneys' fees and certain non-taxable costs, which I considered at the hearing to determine damages. ECF No. 31. Defendants failed to appear at the hearing. For the following reasons, I grant SMS' motion for default judgment, including an award for damages, and I grant SMS' motion for attorneys' fees and costs.

I.      **Procedural History**

      On September 21, 2023, SMS filed a motion for a preliminary injunction, seeking to enjoin defendants from continuing to operate an unauthorized Sit Means Sit business identified within applicable Franchise agreements, among other alleged competitive violations. ECF No. 6. Defendants were served with a copy of the complaint and injunction motion,[3] but failed to file an answer or opposition to the injunction. As a result, the court set a hearing on the preliminary

---

[1] "NC" is short for North Carolina.
[2] Joseph Arnette was initially named as a defendant but has since been voluntarily dismissed with prejudice by SMS. *See* ECF Nos. 16; 17 (corrected version).
[3] *See* ECF Nos. 10; 11; 12; 13.

injunction for November 1, 2023, to give defendants (and their counsel) another opportunity to appear. ECF No. 15. Counsel for SMS was present, but no one appeared for or on behalf of defendants. ECF No. 18. On March 22, 2024, SMS filed a motion for default judgment. ECF No. 26. Defendants' response was due on April 4, 2024. Despite being properly served (ECF No. 27), defendants did not oppose the motion and have not otherwise appeared in this action. I thus granted SMS' motion, entered default judgment against defendants, and set a hearing for May 29, 2024 to determine damages. ECF No. 29. On May 10, 2024, SMS filed a motion to correct a clerical error in my order granting default judgment, which I granted. ECF Nos. 30; 33. On May 21, 2024, SMS filed a motion for attorneys' fees and an award of certain non-taxable costs.[4] ECF No. 31. I considered SMS' motion for attorneys' fees and costs at the May 29 hearing. At the May 29 hearing, counsel for SMS was present, but no one appeared for or on behalf of defendants. After hearing from SMS's counsel, I indicated my inclination to rule in favor of SMS with respect to its request for an award of damages and with respect to its request for an award of attorneys' fees and costs. I directed SMS' counsel to prepare and submit a proposed order within fourteen days.

II.     Discussion

   A.  Default judgment

Obtaining a default judgment under Federal Rule of Civil Procedure 55 is a two-step process. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (explaining the process). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After default is entered, a party may seek entry of default judgment under Rule 55(b).

---

[4] SMS filed a Bill of Costs contemporaneously with its motion for attorneys' fees and costs. ECF No. 32. Because SMS seeks non-taxable costs, I consider charging SMS' costs as a part of the fee award pursuant to Local Rule 54-14(a)(2). Accordingly, the Clerk of the Court shall not consider the bill of costs or otherwise tax costs in this case.

Upon entry of default, I take as true the factual allegations in the non-defaulting party's complaint, except those related to the amount of damages. Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Nonetheless, "[e]ntry of default does not entitle the non-defaulting party to a default judgment as a matter of right." *Warner Bros Ent. Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). The "general rule [is] that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citing *Peno v. Seguros La Comercial*, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). Whether to grant a default judgment lies within the district court's discretion. *Id.*

SMS' default judgment motion requests (1) a permanent injunction enjoining defendants from continuing to use SMS' trademarks, confidential information, and system to operate their unauthorized dog training businesses; and (2) damages in the amount of $15,600 against SMS NC; $31,200 against SMS Houston; and $46,800 against Parvizian. ECF No. 26.

SMS has satisfied the procedural requirements for default judgment as the clerk has entered a default against defendants. ECF No. 21. I now consider the following factors in determining whether to grant a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

The first *Eitel* factor considers whether SMS will suffer prejudice if a default judgment is not entered. Defendants failed to defend against this lawsuit and failed to abate their unauthorized operation of the SMS franchise. SMS will suffer prejudice if default judgment is not entered, as it will have no other means to litigate its claims. *See PepsiCo, Inc. v. Caifornia Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Potential prejudice to Plaintiffs favors granting a default judgment . . . . If Plaintiffs' motion for default judgment is not granted, Plaintiffs will

likely be without other recourse for recovery."). Thus, this factor weighs in favor of entry of default judgment.

The second and third *Eitel* factors favor a default judgment when the "plaintiff state[s] a claim on which the plaintiff may recover." *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978). Here, SMS seeks judgment on its claims of (1) breach of franchise agreement (count one); (2) breach of the Winston-Salem Guaranty, the Parvizian Confidentiality and Non-Competition Agreement, and the Franchise Owner Agreement (counts two and three); (3) trademark counterfeiting/infringement under 15 U.S.C. § 1114 (count four); (4) misappropriation of trade secrets under 18 U.S.C. § 1836 et seq. (count five); and (5) declaratory relief. ECF No. 1 at 22–29.

Breach-of-contract claims require: (1) a valid contract, (2) performance or excuse of performance by the plaintiff, (3) material breach by the defendant, and (4) damages as a result of the breach. *See Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) (quoting *Malone v. Univ. of Kansas Med. Ctr.*, 552 P.2d 885, 888 (Kan. 1976)). The complaint adequately alleges that: a valid contract existed (as well as attaches the contracts as exhibits);[5] SMS was not deficient in its performance; defendants breached the contract;[6] and SMS suffered damages as a result.[7]

A claim for trademark counterfeiting/infringement under the Lanham Act requires: (1) ownership of a registered trademark; (2) use of that mark by the owner before the alleged infringing use; (3) the infringer's use of a virtually identical or confusingly similar trademark without the owner's consent; and (4) that the infringer's use is likely to cause confusion, or to cause a mistake or to deceive. *See Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969–70 (9th Cir. 2007); *Pepsico, Inc.*, 238 F. Supp. 2d at 1175–76; 15 U.S.C. § 1114(1)(a), (b). The complaint adequately alleges: SMS' ownership of its trademarks (and has attached the trademark

---

[5] ECF No. 2-2 through No. 2-30.
[6] Specifically, for example, by (a) failing to make all required royalty payments to SMS as required by the parties' franchise agreements; (b) failing to comply with the post-termination obligations set forth in the parties' franchise agreements; (c) using SMS' confidential, proprietary, and trade secret information comprising the SMS System in connection with a competitive dog training business; and (d) owning and operating a competitive dog training business after termination of the SMS NC Franchise Agreement. ECF No. 1 at ¶¶ 60, 64, 68.
[7] ECF Nos. 2-31–2-33.

registrations themselves);[8] that SMS was using such marks prior to defendants' infringement,[9] that defendants' usage was without consent,[10] and that the use is likely to cause confusion.[11]

A claim for misappropriation of trade secrets under the Defend Trade Secrets Act requires: (1) that the plaintiff possessed a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020); 18 U.S.C. § 1839(5). The complaint adequately alleges that: SMS possessed trade secrets regarding its dog training "System",[12] defendants misappropriated that System,[13] and such misappropriation caused SMS harm.[14] Thus, because SMS has adequately alleged and supported the elements of its various claims, I find that the second and third Eitel factors weigh in favor of entry of default judgment.

In assessing the fourth *Eitel* factor, I consider "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether 'the recovery sought is proportional to the harm caused by [the] defendant's conduct.'" *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (quoting *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010)); *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. Here, SMS seeks a total of $46,800 from defendants in compensatory and liquidated damages. ECF No. 26 at 10–11. I find this amount to not be a large sum, especially in relation to the seriousness of defendants' persistent disregard for their contractual obligations and their competitive violations. Further, I find the requested damages breakdown to be relatively proportional to the harm caused by defendants' conduct as the damages represent missed

---

[8] ECF No. 2-1.
[9] ECF No. 1 at ¶¶ 10–11.
[10] *Id.* at ¶¶ 37–52 (outlining defendants' failure to pay for the usage of the trademarks, SMS' decision to terminate the franchise agreements, and defendants' continuing unauthorized use of the trademarks); *see also* Plf.'s Exs. 31–38, ECF Nos. 2-31–2-38.
[11] ECF No. 1 at ¶ 57; *see also* ECF No. 6-5 (multiple 1 star Yelp reviews of Sit Means Sit Houston).
[12] ECF No. 1 at ¶¶ 11, 15.
[13] *Id.* at ¶¶ 32, 42, 50, 52.
[14] *Id.* at ¶¶ 56–57, 76, 78; *see also* ECF No. 6-5 (multiple 1 star Yelp reviews of Sit Means Sit Houston).

royalty payments as well as harm to SMS' business by the bad reviews caused by defendants' unauthorized, apparently poorly run businesses. This factor thus weighs in favor of entry of default judgment.

The fifth *Eitel* factor weighs the possibility of a dispute regarding facts material to the case. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.* (citation omitted). Defendants have not appeared to rebut any of SMS' allegations. Moreover, SMS has both sufficiently pled facts demonstrating its entitlement to relief as well as provided a multitude of exhibits which support its claims, including the trademark registrations, the franchise and licensing contracts and agreements, email communications and photographs demonstrating defendants' breach, and customer reviews demonstrating harm to SMS' reputation and goodwill. Defendants have had the opportunity to clarify that they did not engage in unauthorized behavior or breach the contracts and have not chosen to do so. Consequently, there is little likelihood of a dispute regarding whether defendants are liable in this case. Thus, the fifth factor weighs in favor of entry of default judgment.

The sixth *Eitel* factor considers whether the defendants' default is due to excusable neglect. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. No evidence before me suggests that defendants failed to respond due to excusable neglect. Thus, the sixth *Eitel* factor weighs in favor of entry of default judgment. *See United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam) (holding that it was "perfectly appropriate" for the district court to enter default judgment against a defendant that failed to appear in the action).

Finally, the seventh *Eitel* factor considers the policy favoring a decision on the merits. "Cases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But defendants' failure to respond to the complaint "makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Thus, while this final *Eitel* factor always weighs against an entry of default judgment, it does not preclude me from entering one. "A

decision on the merits is desirable, but under these circumstances, default judgment is warranted." *Nevada Prop. 1, LLC v. Kiwibank Ltd.*, 2020 WL 5633048, at *2 (D. Nev. Sept. 21, 2020).

I find that SMS is entitled to default judgment against defendants in the form of their requested injunctive relief and monetary damages in the amount of $46,800. On this amount, SMS NC is jointly and severally liable for $15,600;[15] SMS Houston is jointly and severally liable for $31,200;[16] and Parvizian is jointly and severally liable for $46,800.[17]

### B. Award of attorneys' fees

A party filing a motion for attorneys' fees must (1) file within fourteen days after the entry of judgment; (2) specify the judgment and grounds entitling the movant to the award; (3) state the amount sought or provide a fair estimate; and (4) if the court orders, disclose the terms of any agreement about fees for the services which the claims is made. Fed. R. Civ. P 54(d)(2). The motion must also set forth the factors provided by Local Rule 54-14.

SMS has satisfied the procedural requirements for a motion for attorneys' fees. ECF No. 26. I now consider the factors set forth in Fed. R. Civ. P 54(d)(2) and LR 54-14 in determining whether to grant attorneys' fees.

"Under both federal and Nevada law, valid contractual provisions for the payment of attorneys' fees constitute a sufficient source of authority supporting a fee award." *Hunt v. Zuffa, LLC*, 528 F. Supp. 3d 1180, 1183 (D. Nev. 2021). The franchise agreements and the franchise owner agreement entitle the prevailing party in this dispute to attorneys' fees and costs. ECF No. 24-1 at ¶ 21.11; ECF No. 2-29 at ¶ 21.11; ECF No 2-27 at ¶ 7(a). SMS is the prevailing party in this dispute in light of the default judgment and relief granted in this order. SMS is therefore

---

[15] SMS NC is liable for $1,200 as compensatory damages for missed royalty payments and $14,400 as liquidated damages pursuant to its franchise agreement. ECF No. 26 at 10; ECF No. 1 at ¶ 44; ECF No. 24-1 at § 16.2.

[16] SMS Houston is liable for $2,400 as compensatory damages for missed royalty payments and $28,800 as liquidated damages pursuant to its franchise agreement. ECF No. 26 at 10; ECF No. 1 at ¶ 44; ECF No. 2-29 at § 16.2.

[17] Parvizian is personally liable for both SMS NC's and SMS Houston's liabilities as a guarantor of the franchise agreements. ECF No. 26 at 10; ECF No. 1-20 at § 11.3; ECF No. 2-28 at § 4.

contractually entitled to its attorneys' fees and non-taxable costs pursuant to Paragraph 21.11 of the franchise agreements and Paragraph 7(a) of the franchise owner agreement.

Local Rule 54-14(a)(1) requires the moving party to set forth a reasonable itemization and description of the work performed. Here, SMS requests attorneys' fees in the amount of $69,199.16. ECF No. 31. To support its request, SMS provided copies of invoices attached to the declaration of Matthew Kreutzer, attached to SMS' motion for attorneys' fees as Exhibit A. *Id.*; *see also* ECF No. 31-2. These invoices satisfy LR 54-14(a)(1).

Local Rule 54-14(a)(2) requires the moving party to set forth an itemization of all non-taxable costs sought to be charged as part of the fees award. SMS requests non-taxable costs in the amount of $5,320.91,[18] charged as a part of the fee award. ECF Nos. 31; 32. In satisfaction of LR 54-14(a)(2), SMS attached itemized receipts to its Bill of Costs (ECF No. 32) supporting each cost incurred. I find that SMS' Bill of Costs, itemized receipts, and accompanying declaration of counsel verifying the receipts, all support charging defendants with $5,320.91 in non-taxable costs as a part of SMS' fee award.

Local Rule 54-14(a)(3) requires the moving party to set forth a brief summary of thirteen factors that the court considers when determining the appropriate award for attorneys' fees. SMS provides a discussion of these factors in the declaration of Matthew Kreutzer attached to its motion. *See* ECF No. 31-1. I now consider these factors.

The first factor is the results obtained and the amount involved. LR 54(a)(3)(A). SMS obtained default judgment, a permanent injunction, and an award of damages in the amount of $46,800. Accordingly, this factor weighs in favor of awarding SMS its attorneys' fees.

The second factor is the time and labor required. *Id.* at (a)(3)(B). As evidenced by the submitted invoices, the prosecution of this case required approximately 179.6 hours of attorney time and approximately 11.8 hours of paralegal time over the course of approximately ten

---

[18] SMS submitted a bill of costs in the amount of $5,325.91. ECF No. 32 at 1. However, that appears to be a scrivener's error as the non-taxable cost amounts provided in counsel's declaration total $5,320.91. ECF No. 32-1 at 2.

months. ECF No. 31-1 at ¶ 8; *see also* ECF No. 31-2. The labor required was that of skilled attorneys. Accordingly, this factor weighs in favor of awarding SMS its attorneys' fees.

The third factor is the novelty and difficulty of the questions involved. LR 54(a)(3)(C). This case was made more difficult by the multiple, complex contractual relationships between SMS and defendants, the questions involving SMS' intellectual property rights and trade secrets, its entitlement to injunctive relief, and defendants' failure to appear. ECF No. 31-1 at ¶ 9. Accordingly, this factor weighs in favor of awarding SMS its attorneys' fees.

The fourth factor is the skill requisite to perform the legal service properly. LR 54(a)(3)(D). This matter required skilled attorneys. ECF No. 31-1 at ¶ 10.  Despite defendants' failure to appear, I find that counsel skilled in the areas of franchise law, contract law, and intellectual property licensing were required to prosecute this case, and that the skill of SMS' counsel streamlined these proceedings. Accordingly, this factor weighs in favor of awarding SMS its attorneys' fees.

The fifth factor is the preclusion of other employment by the attorney due to acceptance of the case. LR 54(a)(3)(E). SMS' counsel represents that it was not directly precluded from other employment due to their acceptance of this case. ECF No. 31-1 at ¶ 11. However, counsel expended time and resources on this case that, but for the prosecution of this matter, could have been dedicated to other matters. *Id.* Accordingly, this factor weighs in favor on awarding SMS its attorneys' fees.

The sixth factor is the lawyer's customary fee, and the seventh factor is whether the fee is fixed or contingent. LR 54(a)(3)(F) & (G). SMS' attorneys' fees were based on hourly rates that ranged between $325 per hour to $485 per hour, which are customary for a case such as this. ECF No. 31-1 at ¶¶ 12–13. Accordingly, these factors weigh in favor of awarding SMS its attorneys' fees.

The eighth factor is the time limitations imposed by the client or the circumstances. LR 54(a)(3)(H). In this case, time was of the essence and SMS was required to seek preliminary

injunctive relief because it was suffering irreparable injury every day that defendants continued to operate a competing dog training business and continued to infringe upon SMS' trademarks and trade secrets. ECF No. 19 at 4–5. Accordingly, this factor weighs in favor of awarding SMS its attorneys' fees.

The ninth factor is the experience, reputation, and ability of the attorneys. LR 54(a)(3)(I). I find that SMS' attorneys are experienced, reputable, litigators and members in good standing of the State Bar of Nevada. Accordingly, this factor weighs in favor of awarding SMS its attorneys' fees.

The tenth factor is the undesirability of the case, if any. LR 54(a)(3)(J). SMS did not represent that this case was undesirable. ECF No. 31-1 at ¶ 16. Accordingly, this factor is neutral and weighs neither in favor of nor against awarding SMS its attorneys' fees.

The eleventh factor is the nature and length of the professional relationship with the client. LR 54(a)(3)(K). SMS' attorneys, Howard & Howard Attorneys PLLC, have represented SMS since 2010, approximately fourteen years. ECF No. 31-1 at ¶ 17. Accordingly, this factor weighs in favor of awarding SMS its attorneys' fees.

The twelfth factor is awards in similar cases. LR 54(a)(3)(L). I find that the award SMS requests is reasonable and within the range of fees awarded in similar franchisor-franchisee disputes. *See Passport Health, Inc. v. Travel Med, Inc.*, 2011 WL 6211874, at *3 (E.D. Cal. Dec. 14, 2011) (concluding that "[i]n total, Plaintiff is awarded $144,592.50 for the attorneys' fees it incurred to enforce the Franchise Agreement."); *see also Accor Franchising N. Am., LLC v. Elohim Ent. Inc.*, 2013 WL 1415043, at *1 (E.D. Cal. Apr. 8, 2013) (magistrate judge recommending Plaintiff's motion for default judgment be granted "in the total amount of $114,805.63, comprising $20,060.78 for past due franchise fees, $75,000.00 for liquidated damages, prejudgment interest of $7,129.55 and $12,615.30 for attorneys' fees and costs.") Accordingly, this factor weighs in favor of awarding SMS its attorneys' fees.

The thirteenth factor is any other information the court may request. LR 54(a)(3)(M). Here, I did not request any further information from SMS.

Based on these factors and the documentation of invoices and receipts submitted by SMS, I find that SMS is entitled to an award of attorneys' fees and non-taxable costs against defendants in the amount of $74,520.07. Defendants are jointly and severally liable for this amount.

### III. Conclusion

On May 7, 2024, the court granted SMS' motion for default judgment (ECF No. 26) but left the resolution of damages for the hearing on May 29, 2024 (ECF No. 29). This amended order grants SMS' request for default judgment damages and its request for attorneys' fees and costs.

Based on the information before it, the court permanently enjoins defendants and their respective officers, agents, servants, employees, and/or all persons acting in concert or participation with the foregoing persons with actual notice of this order from:

1. Using the SMS marks in commerce in connection with the advertising, promotion, or operation of a dog training business;

2. Misappropriating, using in commerce in connection with the operation of a dog training business, or disclosing any confidential component of SMS' System to any third party;

3. Operating a dog training business in the following Winston-Salem, North Carolina area zip codes: 27006, 27012, 27018, 27023, 27040, 27050, 27103, 27104, and 27106;

4. Operating a dog training business in the following Houston, Texas area zip codes: 77002, 77003, 77004, 77005, 77006, 77007, 77008, 77010, 77018, 77019, 77021, 77023, 77024, 77025, 77027, 77030, 77033, 77036, 77041, 77042, 77046, 77054, 77055, 77056, 77057, 77061, 77063, 77065, 77074, 77077, 77081, 77084, 77087, 77095, 77096, 77098, 77401; 77429, 77433, 77449, 77450, 77493, and 77494; and

5. Deleting or destroying any and all evidence, in any form (paper, electronic, etc.), relevant to SMS' allegations set forth in the complaint, including, without limitation, text messages, emails, faxes, social media posts/websites, and letters.

IT IS FURTHER ORDERED that SMS is entitled to an award of liquidated damages in the amount of $46,800.

The Clerk of Court is instructed to enter judgment in favor of SMS and against SMS Houston, SMS NC, and Hamid Parvizian as follows: SMS NC is jointly and severally liable for $15,600, SMS Houston is jointly and severally liable for $31,200; and Parvizian is jointly and severally liable for $46,800.

IT IS FURTHER ORDERED that SMS' motion for attorneys' and costs **[ECF No. 31] is GRANTED**. In addition to the liquidated damages awarded above, SMS is entitled to an award of attorneys' fees and non-taxable costs.

The Clerk of Court is instructed to enter judgment in favor of SMS and against SMS Houston, SMS NC, and Hamid Parvizian, jointly and severally, in the additional amount of $74,520.07.

Dated: June 26, 2024

_____
Cristina D. Silva
United States District Judge